COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-489-CR
  
  
ERIC D. DUNBAR                                                                   APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM THE 371ST DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        A 
jury found appellant, Eric D. Dunbar, guilty of aggravated sexual assault of a 
child under fourteen years of age, and the trial judge sentenced him to forty 
years’ imprisonment. In nine issues, Dunbar challenges both his conviction and 
punishment. We will affirm.
II. Background Facts and Procedural History
        In 
December of 2002, the complainant’s mother discovered a diary in which her 
thirteen-year-old daughter, C.D.E., described having sex with Dunbar. Dunbar was 
the live-in boyfriend of C.D.E’s sister, Shanika. C.D.E.’s mother confronted 
her about the diary entries and filed a complaint with police. Dunbar was 
subsequently indicted on two counts of aggravated sexual assault of a child 
under fourteen years of age. A jury convicted Dunbar on the first count but 
acquitted him on the second count.
III. Motion for Directed Verdict
        In 
his eighth issue, Dunbar contends that the trial court erred when it overruled 
his Motion for Directed Verdict.[2]  
Specifically, Dunbar contends that the evidence is insufficient to support his 
conviction as a matter of law.
A. Standard of Review
        A 
challenge to the denial of a motion for instructed verdict is actually a 
challenge to the legal sufficiency of the evidence. McDuff v. State, 939 
S.W.2d 607, 613 (Tex. Crim. App.), cert. denied, 522 U.S. 844 (1997); Franks 
v. State, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.).
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
B. Analysis
        The 
State indicted Dunbar on two counts of aggravated sexual assault of a child 
under fourteen years of age. However, the record reflects that Dunbar was 
acquitted on the second count. Thus, we will evaluate the legal sufficiency of 
the evidence to support Dunbar’s conviction under the first count of the 
indictment. To convict Dunbar of aggravated sexual assault of a child under 
fourteen, the State had to prove that Dunbar intentionally or knowingly caused 
the sexual organ of the victim, a child younger than fourteen years of age who 
was not his spouse, to contact his sexual organ. See Tex. Penal Code Ann. § 22.021(a)(B)(iii) 
(Vernon Supp. 2004-05).
        At 
trial, C.D.E., testified that she turned thirteen years of age during June of 
2002 and that she had never been married. She testified that near the end of 
that month, while spending the night at her sister’s home, she and Dunbar had 
sexual intercourse. Specifically, C.D.E. testified that she was asleep on the 
couch when she was awakened by Dunbar rubbing her legs. She testified that 
Dunbar then moved his hand up her leg and under her clothes. She stated that he 
touched her breast, then put his hand into her pants, where he touched and 
rubbed her vagina. She testified that after he rubbed her vagina, he laid behind 
her on the couch and proceeded to put his penis inside of her. She indicated 
that after a few minutes he took his penis out of her, ejaculated, and went back 
to sleep.
        Dunbar 
contends that C.D.E.’s testimony is not credible and that no rational trier of 
fact could have found him guilty. In support of his contention, Dunbar asserts 
that C.D.E. recanted “some of the statements in the diary”[3] 
and argues that the jury must have determined much of the evidence to be untrue 
because they found him not guilty of one of the charges.  We disagree.
        As 
the exclusive judges of the facts, the credibility of the witnesses, and the 
weight to be given their testimony, a jury may believe or disbelieve all or any 
part of a witness’s testimony.  McKinny v. State, 76 S.W.3d 463, 
468-69 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  A court of appeals 
must show deference to such a jury finding. Cain v. State, 958 S.W.2d 
404, 409 (Tex. Crim. App. 1997).  We may not substitute our judgment for 
that of the fact finder.  Dewberry, 4 S.W.3d at 740.
        After 
viewing all the evidence in the light most favorable to the verdict, we conclude 
that a rational trier of fact could have found, beyond a reasonable doubt, that 
Dunbar committed the offense of aggravated sexual assault of a child under 
fourteen years of age. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. 
Accordingly, we hold that the trial court did not err when it overruled 
Dunbar’s Motion for Directed Verdict because the evidence was legally 
sufficient to support Dunbar’s conviction. We overrule Dunbar’s eighth 
issue.
IV. Commitment Questions
        In 
his first two issues, Dunbar argues that the trial court erred by (1) overruling 
his motion to quash the entire jury panel because a questionnaire presented to 
potential jurors contained an “unfair commitment question” asking potential 
jurors whether they could convict on the testimony of a child assuming they 
believed the testimony of the child, and (2) overruling his objection during voir 
dire to an “unfair commitment question” regarding whether potential 
jurors “could convict [on] the testimony of one witness alone.” The State 
acknowledges that both questions are commitment questions but argues that they 
are not improper commitment questions. We agree.
A. Standard of Review
        A 
trial court has broad discretion over the process of selecting a jury. Barajas 
v. State, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); Allridge v. State, 
762 S.W.2d 146, 167 (Tex. Crim. App. 1998), cert. denied, 489 U.S. 1040 
(1989); Lydia v. State, 117 S.W.3d 902, 904 (Tex. App.—Fort Worth 2003, 
pet. ref’d). We leave to the trial court’s discretion the propriety of a 
particular question, and the trial court’s discretion will not be disturbed on 
appeal absent an abuse of that discretion. Sells v. State, 121 S.W.3d 
748, 755 (Tex. Crim. App.), cert. denied, 540 U.S. 986 (2003); Barajas, 
93 S.W.3d at 38; Allridge, 762 S.W.2d at 163; Lydia, 117 S.W.3d at 
904. A trial court’s ruling constitutes an abuse of discretion only when it is 
made without reference to any guiding rules or principles, so as to render the 
conclusion ultimately reached so arbitrary and unreasonable that it falls 
outside the zone within which reasonable minds may differ. See Montgomery v. 
State, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990) (op. on reh’g).
B. Analysis
        The 
determination of whether a question propounded to venire members during voir 
dire is a proper commitment question is a three-part inquiry. See 
Standefer v. State, 59 S.W.3d 177, 179-80 (Tex. Crim. App. 2001). In Standefer, 
the court of criminal appeals held that during voir dire a trial court 
should first determine if a question is a commitment question. 59 S.W.3d at 
181-82. If it is a commitment question, then the court must decide whether it is 
nevertheless a proper question. Id. For it to be a proper commitment 
question, one of the possible answers to the question must give rise to a valid 
challenge for cause. Id. However, even if a question meets the 
“challenge for cause” requirement, the inquiry does not end there. Id. 
at 182. A proper commitment question must also contain only those facts 
necessary to test whether a prospective juror is challengeable for cause. Id.
        In 
this case, the State acknowledges that both questions were commitment questions. 
Thus, for each question we must determine (1) whether an answer to the question 
would give rise to a valid challenge for cause, and (2) whether the question 
contains only those facts necessary to determine whether a prospective juror is 
challengeable for cause. See Standefer, 59 S.W.3d at 179-80.
C. The Jury Questionnaire
        In 
his first issue, Dunbar contends that the trial court erred in overruling his 
motion to quash the entire jury panel because of the following question posed to 
prospective jurors before voir dire: “Could you convict on the 
testimony of a child assuming you believed the child?” Dunbar concedes that 
this court in Bobo v. State considered the propriety of a very similar 
question and found the question not to be improper. No. 2-02-371-CR, 2004 WL 
541380, *1 (Tex. App.—2004, pet. ref’d) (not designated for publication). 
Dunbar asserts that we erred in Bobo and urges us to reverse our 
decision. We decline to do so.
        As 
stated in Bobo, “a challenge for cause is properly based on bias if the 
venire member has an automatic predisposition toward a witness’s credibility 
based upon knowledge of a certain fact about the witness.” Id. (citing Harris 
v. State, 122 S.W.3d 871, 880 (Tex. App.—Fort Worth 2003, pet ref’d). 
Here, as in Bobo, had a venire member answered “no” to the challenged 
question, the State would have been entitled to a challenge for cause due to the 
automatic predisposition demonstrated by the venire member against testimony 
from children whom the venire member believed were testifying truthfully. Id. 
Further, the question contained only those facts necessary to a challenge for 
cause. See id. Accordingly, we conclude that the trial court did not 
abuse its discretion when it overruled Dunbar’s motion to quash the jury 
panel. We overrule Dunbar’s first issue.
D. The Question During Voir Dire
        In 
his second issue, Dunbar contends that the trial court erred in overruling his 
objection to the following question posed by the State to the panel regarding 
whether they could convict on the testimony of one witness alone:
  
Is there anyone that would require more than one witness? If you believe that 
witness beyond a reasonable doubt on this Defendant, Tarrant County, Texas, 
intentionally or knowingly, sexually contact with the Defendant’s penis on or 
inside the injured party’s female sexual organ, and the child is under 14, not 
married to him. Is there anyone here that would require the State to present 
more than one witness if you believe that witness beyond a reasonable doubt on 
every element?
    
When 
Dunbar objected, the prosecutor responded, “Your Honor, I’m asking them to 
follow the law,” to which the trial court replied, “Overruled. Let’s move 
along.”
        In 
Standefer, the Texas Court of Criminal Appeals expressly recognized that 
attorneys conducting voir dire could seek to bind members of the venire 
to follow the law. 59 S.W.3d at 181. Further, the State may challenge a juror 
for cause when the juror would hold the State to a higher standard than 
“beyond a reasonable doubt.”  Coleman v. State, 881 S.W.2d 344, 
360 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 1096 (1995).  
Consequently, a prospective juror is properly subject to challenge for cause if 
he indicates that he could not convict based on the testimony of one witness, 
even if he believed that witness beyond a reasonable doubt. See Castillo v. 
State, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995). However, prospective 
jurors are not challengeable for cause merely for setting their threshold for 
reasonable doubt higher than the minimum required by law, e.g., a prospective 
juror who would require the testimony of more than one witness to be convinced 
beyond a reasonable doubt. See id.
        Thus, 
the State was entitled to inquire if prospective jurors would hold the State to 
a higher burden of proof than the law would allow. See Standefer, 
59 S.W.3d at 181; Castillo, 913 S.W.2d at 533-34. A “yes” answer from 
a prospective juror would give rise to a challenge for cause. Further, the 
State’s question contained only those facts necessary to establish the 
elements of the crime. See Standefer, 59 S.W.3d at 181. Accordingly, we 
conclude that the trial court did not abuse its discretion when it overruled 
Dunbar’s objection. We overrule Dunbar’s second issue.
V. C.D.E.’s Diary
        In 
his third issue, Dunbar contends that the trial court abused its discretion by 
denying two motions for mistrial. In addition, he contends that the trial court 
erred when it overruled his objections to the admission of a diary.
A. Motions for Mistrial
1. Standard of Review
        When 
the trial court sustains an objection and instructs the jury to disregard but 
denies a defendant’s motion for mistrial, the issue is whether the trial court 
abused its discretion in denying the mistrial. Hawkins v. State, 135 
S.W.3d 72, 77 (Tex. Crim. App. 2004). A trial court does not abuse its 
discretion if its decision is at least within the zone of reasonable 
disagreement. Montgomery, 810 S.W.2d at 391.
2. Analysis
        During 
opening statement, the prosecutor told the jury that C.D.E.’s mother 
discovered that C.D.E. was having sex with Dunbar when she read C.D.E.’s 
diary. Dunbar’s defense counsel objected to the statement because it was 
subject to a prior motion in limine and requested a ruling outside the presence 
of the jury. The trial court sustained the objection by instructing the 
prosecutor not to go into the diary’s contents and instructed the jury to 
disregard the statement, but the trial court denied Dunbar’s motion for 
mistrial. Shortly thereafter, during the testimony of the C.D.E.’s mother, the 
following exchange took place:
   
[Prosecutor]: Okay. And without going into how it was that you learned there may 
be a problem, did something prompt you to talk with your daughter and confront 
her about an issue?
 
[C.D.E.’s 
Mother]: Yes.
 
[Prosecutor]: 
What did you confront her about?
 
[C.D.E.’s 
Mother]: A diary.
 
[Defense 
Counsel]: Your Honor, I’m going to object. This is going into hearsay. It’s 
also violative of our motion in limine, and we at least ask that this line of 
testimony be investigated outside the presence of the jury.
 
[The 
Court]: All right.
 
[Prosecutor]: 
And, Judge, we have no objection to - I mean, we have - we agree with defense 
objection, ask that the last answer be stricken.
 
[Defense 
Counsel]: Ask that the jury be instructed to disregard.
 
[The 
Court]: The jury will so disregard.
 
[Defense 
Counsel]: And move for a mistrial.
 
[The 
Court]: Denied.
   
        A 
mistrial is an extreme remedy for prejudicial events occurring during the trial 
process and should be granted only when residual prejudice remains after 
objections are sustained and curative instructions given. West v. State, 
121 S.W.3d 95, 106 (Tex. App.—Fort Worth 2003, pet. ref’d). Only in extreme 
circumstances, where the prejudice caused by an improper argument is incurable, 
i.e., “so prejudicial that expenditure of further time and expense would be 
wasteful and futile,” will a mistrial be required. Id.; see also 
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert denied, 
124 S. Ct. 2837 (2004). It is presumed that the jury will follow the trial 
court’s instructions to disregard the evidence. Gardner v. State, 730 
S.W.2d 675, 696 (Tex. Crim. App.), cert. denied, 108 S. Ct. 248 (1987). 
An instruction to disregard an improper jury argument is generally sufficient to 
cure error. Shannon v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996). 
Likewise, a prompt instruction to disregard will ordinarily cure error 
associated with an improper question and answer. Simpson, 119 S.W.3d at 
272.
        Here, 
while Dunbar complains that the trial court erred in denying his two motions for 
mistrial, he does not address why the trial court’s instructions to disregard 
could not cure the alleged harm. Further, we note that in both instances the 
trial court promptly instructed the jury to disregard. Accordingly, we presume 
that the jury followed the trial court’s instruction. See Gardner, 730 
S.W.2d at 696. Thus, we hold that the trial court did not abuse its discretion 
when it denied Dunbar’s motions for mistrial. See Hawkins, 135 S.W.3d 
at 77; Mosley, 983 S.W.2d at 259.
B. The Diary
        Dunbar 
also complains that the trial court erred when it overruled his objections to 
the admission of C.D.E.’s diary. Specifically, Dunbar asserts that the 
statements contained in the diary are hearsay and are not admissible under any 
valid exception to the hearsay rule.
1. Standard of Review
        We 
review the trial court's decision to admit or exclude evidence under an abuse of 
discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 
2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), cert. 
denied, 520 U.S. 1200 (1997); Montgomery, 810 S.W.2d at 379-80. The 
test for abuse of discretion is not whether, in the opinion of the reviewing 
court, the facts present an appropriate case for the trial court's action; 
rather, it is a question of whether the court acted without reference to any 
guiding rules or principles, and the mere fact that a trial court may decide a 
matter within its discretionary authority differently than an appellate court 
does not demonstrate such an abuse. Montgomery, 810 S.W.2d at 391. We 
will not reverse a trial court's ruling on the admission of evidence as long as 
the ruling is within the zone of reasonable disagreement. Id.
2. Analysis
a. Testimony of C.D.E.’s Mother
        As 
previously discussed, Dunbar objected to any mention of the diary on hearsay 
grounds during the State’s opening statement and again at the beginning of 
C.D.E.’s mother’s testimony. The trial court sustained those objections and 
instructed the jury to disregard but denied Dunbar’s motions for mistrial. 
Soon thereafter, the trial court held a hearing outside the presence of the jury 
regarding the propriety of the State’s attempt to elicit testimony from 
C.D.E.’s mother regarding her discovery of the diary. At the conclusion of 
that hearing, the trial court ruled that the State could elicit testimony from 
C.D.E.’s mother that she found the diary but that the State could not elicit 
testimony regarding the contents of the diary. Subsequently, the following 
exchange took place:
   
[Prosecutor]: And how is it that you came to know there was any problem?
 
[C.D.E.’s 
Mother]: Found the diary.
 
[Defense 
Counsel]: Your Honor, I’m going to object to any mention of the diary.
 
[The 
Court]: All right. Over –
  
[Defense 
Counsel]: Hearsay.
  
[The 
Court]: Overruled.
  
[Prosecutor]: 
Where did you find the diary? Or how did you find the diary?
  
[C.D.E.’s 
Mother]: I was packing [C.D.E.’s] overnight bag for her, which I typically do 
or did, and the diary was there. I found it.
 
[Prosecutor]: 
You had not seen the diary before?
 
[C.D.E.’s 
Mother]: No.
 
[Prosecutor]: 
And without disclosing any contents of the diary, what if anything, did you do 
next after packing the bag?
 
[Defense 
Counsel]: Your Honor, I’m going to object. This actually does call for 
hearsay.  And anything they did as a result of anything in the diary, I 
object to as hearsay.
 
[The 
Court]: All right, Overruled.
 
[Defense 
Counsel]: May I have a running objection to this, Your Honor? I keep 
having to –
 
[The 
Court]: You may.
  
 
[Emphasis 
added.] The State then elicited testimony from C.D.E.’s mother indicating that 
after reading her daughter’s diary, she discussed the contents of the diary 
with her daughter, she took her daughter to a police station, and her daughter 
gave police a statement. She also testified that approximately two weeks later 
she and her daughter again met with police and that she gave police a written 
statement. Finally, C.D.E.’s mother testified that she took her daughter to 
Cooks Children’s Hospital where she received a gynecological exam.
        Hearsay 
is a “statement, other than one made by the declarant while testifying at the 
trial or hearing, offered in evidence to prove the truth of the matter 
asserted.” Tex. R. Evid. 801(d). 
The rules of evidence define “statement” as “(1) an oral or written verbal 
expression or (2) nonverbal conduct of a person, if it is intended by [that] 
person as a substitute for verbal expression.” Id. 801(a). However, an 
out-of-court statement need not be directly quoted in order to run afoul of the 
hearsay rules. See Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. 
App. 1989). As stated in Schaffer, “where there is an inescapable 
conclusion that a piece of evidence is being offered to prove statements made 
outside the courtroom, a party may not circumvent the hearsay prohibition 
through artful questioning designed to elicit hearsay indirectly.”  Id.  
Whether the disputed testimony violates the hearsay prohibition necessarily 
turns on how strongly the content of the out-of-court-statement can be inferred 
from the context.  Head v. State, 4 S.W.3d 258, 259 (Tex. Crim. App. 
1999).
        At 
trial, the State argued for admissibility asserting that the disputed testimony 
was admissible not to prove the truth of the matter asserted, but for the 
purpose of showing the effect that finding and reading the diary had on 
C.D.E.’s mother. On appeal, the State argues that the testimony did not 
constitute hearsay because the testimony did not concern any statement contained 
in the diary, but merely established that the diary existed, that C.D.E.’s 
mother had read the diary, and what she had done in response to finding and 
reading the diary.
        Although 
we believe that, when taken in context, the jury could have deduced from the 
above referenced testimony the general substance of the diary’s contents, the 
record does not lead us to the “inescapable conclusion” that the evidence 
was offered to prove the truth of the statements asserted in the diary because 
the State offered the testimony not to prove the truth of the matter asserted, 
but for the purpose of showing the effect that finding and reading the diary had 
on C.D.E.’s mother, and because the elicited testimony only described how 
C.D.E.’s mother came to suspect that her daughter was having sex with Dunbar 
and what she did in reaction to that suspicion. See Tex. R. Evid. 801(d); Schaffer, 
777 S.W.2d at 114; see also Head, 4 S.W.3d at 262 (indicating that while 
the jury may have been able to deduce the substance of the out-of-court 
statements from the disputed testimony of the witness, the “trial court could 
have reasonably determined that this sort of inferential leap did not provide 
the requisite degree of certainty ‘that the State’s sole intent in 
pursuing this line of questioning was to convey to the jury’ the contents of 
the out-of-court statements.”) (alteration in original) (quoting Schaffer, 
777 S.W.2d at 114); Jordan v. State, 852 S.W.2d 689, 693 (Tex. 
App.—Houston [14th Dist.] 1993) (holding statement not hearsay when offered by 
prosecutor only to demonstrate how police officer reacted thereto), aff’d, 
883 S.W.2d 664 (Tex. Crim. App. 1994). Further, at the time the evidence was 
offered, the trial court could have reasonably concluded that the testimony 
would not prove the substance of any statement contained in the diary. See 
Head, 4 S.W.3d at 262, 262 n.5 (indicating that at the time of the trial 
court’s ruling, the trial court could have reasonably concluded that the 
disputed testimony would not lead to any inescapable conclusions regarding the 
substance of the out-of-court statements). Accordingly, we hold that the trial 
court did not abuse its discretion when it allowed the testimony.
C. Admission of the Diary
        Dunbar 
also complains that the trial court abused its discretion when it overruled his 
objections and allowed the State to introduce the diary into evidence, when it 
allowed C.D.E. to read accounts from her diary into the record, and when it 
allowed her to testify regarding the contents of the diary. The State responds 
that Dunbar failed to preserve error, if any, in the trial court’s admission 
into evidence of actual pages from the diary or in the admission of testimony 
from C.D.E. regarding the substance of her diary. In addition, the State argues 
that “it is not at all certain” that the contents of the diary are hearsay 
under the circumstances of this case.
1. Preservation of Error
        On 
the second day of the trial, during C.D.E.’s testimony, the State offered into 
evidence three pages from C.D.E.’s diary, at which time Dunbar lodged the 
following objection:
  
[Defense Counsel]: Your Honor, we would object under Rule 613 of the Texas Rules 
of Evidence. Apparently these statements are being offered as a prior consistent 
statement, and it specifically states in Rule 613 that prior consistent 
statements of a witness aren’t admissible.
 
[The 
Court]: All right. Overruled. State’s Exhibits 1, 2, and 3 will be admitted.
 
[Defense 
Counsel]: And, Your Honor, we also add to that objection that this is a 
violation of due process of both the Texas and US constitutions.
 
[The 
Court]: All right. Overruled.
   
        The 
State then asked to publish the exhibits by having the witness read them aloud. 
After C.D.E. read the three pages from her diary, the State elicited testimony 
from C.D.E. regarding the assertions made on those pages.
        To 
preserve a complaint for our review, a party must have presented to the trial 
court a timely request, objection, or motion that states the specific grounds 
for the desired ruling if they are not apparent from the context of the request, 
objection, or motion. Tex. R. App. P. 
33.1(a)(1); Mosley v. State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) 
(op. on reh'g), cert. denied, 526 U.S. 1070 (1999). Further, the trial 
court must have ruled on the request, objection, or motion, either expressly or 
implicitly, or the complaining party must have objected to the trial court's 
refusal to rule. Tex. R. App. P. 
33.1(a)(2). The purpose of lodging a timely and specific objection is to inform 
the trial court of the basis of the objection and to give the court an 
opportunity to rule on the specific objection as the evidence is introduced. See 
Aguilar v. State, 26 S.W.3d 901, 906 (Tex. Crim. App. 2000). To preserve 
error, a party must continue to object each time the objectionable evidence is 
offered. Fuentes v. State, 991 S.W.2d 267, 273 (Tex. Crim. App.), cert. 
denied, 528 U.S. 1026 (1999); Ethington v. State, 819 S.W.2d 854, 
858-59 (Tex. Crim. App. 1991). A request for a running objection is timely and 
preserves error as long as it does not encompass too broad a subject matter 
during too broad a time or over different witnesses. Ethington, 819 
S.W.2d at 858-59.
        The 
State argues that Dunbar failed to preserve error on hearsay grounds because he 
did not lodge a hearsay objection at the time the evidence was offered. Further, 
the State argues that Dunbar’s running hearsay objection, granted during the 
testimony of C.D.E.’s mother, is too remote to preserve error during 
C.D.E.’s testimony. In support of that position, the State points out that 
Dunbar’s running objection was granted the prior day, some 46 pages earlier in 
the record, and during the testimony of a different witness.
        After 
reviewing the record, we conclude that Dunbar preserved error. As previously 
discussed, the record reflects that Dunbar objected to any mention of the diary 
during opening statement and that he renewed his objection several times before 
requesting and receiving a running objection from the trial court. Moreover, the 
record reflects that during the first day of trial the trial court conducted a voir 
dire hearing on the subject of the admissibility of the diary shortly before 
granting Dunbar his running objection. Thus, although the evidence at issue was 
not presented until the day following the trial court’s granting Dunbar a 
running objection and was presented during the testimony of another witness, the 
record reflects that the trial court was fully aware of Dunbar’s hearsay 
objection. See Aguilar, 26 S.W.3d at 906. Accordingly, we conclude that 
Dunbar properly preserved his hearsay objection for our review.
C. Analysis
        Citing 
Rule 801(e), the State asserts that it is “not at all certain” that the 
admission into evidence of C.D.E.’s testimony regarding the contents of the 
diary and the admission into evidence of actual pages from the diary constituted 
hearsay because C.D.E. had attempted to recant her allegations and because 
Dunbar “undoubtedly would have interrogated her” about her inconsistent 
statement to prosecutors.
        Rule 
801(e) of the Texas Rules of Evidence provides:
  
(e) 
Statements Which Are Not Hearsay. A statement is not hearsay if:
  
(1) 
Prior Statement by Witness. The declarant testifies at the trial or 
hearing and is subject to cross-examination concerning the statement, and the 
statement is: . . . (B) consistent with the declarant’s testimony and is 
offered to rebut an express or implied charge against the declarant of 
recent fabrication or improper influence or motive
  
Tex. R. Evid. 801(e)(1)(B) (Emphasis 
added).
        Here, 
the trial court admitted the evidence before there was any express or implied 
charge against the witness of recent fabrication, improper influence, or motive. 
Thus, the State did not offer the evidence to rebut an express or implied 
charge against the witness of recent fabrication, improper influence, or motive. 
Therefore, the disputed evidence does not qualify as non-hearsay under Rule 
801(e)(1). Accordingly, we hold that the trial court abused its discretion in 
admitting the evidence.
3. Harm Analysis
        Because 
we conclude that the trial court erred, we must conduct a harm analysis to 
determine if the error would call for reversal of the judgment. Tex. R. App. P. 44.2. If the error is 
constitutional, we apply Rule 44.2(a) and reverse unless we determine beyond a 
reasonable doubt that the error did not contribute to appellant’s conviction 
or punishment. Tex. R. App. P. 
44.2(a). Otherwise, we apply Rule 44.2(b) and disregard the error if it does not 
affect the appellant’s substantial rights. Tex. R. App. P. 44.2(b); see Mosley, 
983 S.W.2d at 259; Coggeshall v. State, 961 S.W.2d 639, 642-43 (Tex. 
App.—Fort Worth 1998, pet. ref’d).
        Although 
the erroneous admission of hearsay evidence can implicate the confrontation 
clause of the Sixth Amendment,[4] we have no 
confrontation clause issue here because the out-of-court declarant testified and 
was available for cross-examination.[5]  Further, 
both the court of criminal appeals and this court have treated a violation of 
the evidentiary rules resulting in the erroneous admission of evidence as 
non-constitutional error.  See Johnson v. State, 967 S.W.2d 
410, 417 (Tex. Crim. App. 1998) (applying Rule 44.2(b) harm analysis to the 
erroneous admission of hearsay evidence); Couchman v. State, 3 S.W.3d 
155, 160 (Tex. App.—Fort Worth 1999, pet. ref’d); see also Elder v. State, 
132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref’d) (indicating that 
the admission of inadmissible hearsay is non-constitutional error).
        Because 
we determine that the error is not constitutional, Rule 44.2(b) is 
applicable.  Therefore, we are to disregard the error unless it affected 
appellant’s substantial rights. Tex. R. App. P. 44.2(b).  A 
substantial right is affected when the error had a substantial and injurious 
effect or influence on the jury’s verdict.  King v. State, 953 
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d 
at 643. In making this determination, we review the record as a whole. Kotteakos, 
328 U.S. at 764-65, 66 S. Ct. at 1248. Where a fact to which hearsay relates is 
sufficiently proved by other competent and unobjected-to evidence, the admission 
of hearsay is properly deemed harmless and does not constitute reversible error. 
Couchman, 3 S.W.3d at 160-61; see Anderson v. State, 717 S.W.2d 
622, 628 (Tex. Crim. App. 1986).
        Here, 
the record reflects that C.D.E. testified in detail regarding her sexual 
encounters with Dunbar independent of the diary. Further, although on 
cross-examination C.D.E. admitted that one of the entries in her diary involving 
the second time she and Dunbar had engaged in sexual activity was not true, the 
record reflects that the jury acquitted Dunbar on that count.[6]  
Thus, the trial court’s error in admitting the hearsay may have actually 
served to benefit Dunbar.
        Therefore, 
after reviewing the record, we conclude that, in the context of the entire case 
against Dunbar, the trial court’s error in admitting the hearsay in question 
did not have a substantial or injurious effect on the jury’s verdict and did 
not affect Dunbar’s substantial rights.  See King, 953 S.W.2d at 
271. We conclude that the error was harmless.  See Tex. R. App. P. 44.2(b).  
Accordingly, we overrule Dunbar’s third issue.
VII. Testimony Regarding the Police Investigation
        In 
his fourth, fifth, sixth, and seventh issues, Dunbar contends that the trial 
court abused its discretion by overruling his objections to the admission of 
certain evidence and by denying two motions for mistrial. As a result, he 
asserts that he was denied a fair trial as required under article 1.03 of the 
Texas Code of Criminal Procedure, the due process clauses of the Fifth and 
Fourteenth Amendments to the United States Constitution, and the due course of 
law clause of article 1, section 19 of the Texas Constitution.[7] 
U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19; Tex. Code Crim. Proc. Ann. art. 1.03(5) 
(Vernon 2005).
A. Admission of Evidence
1. Standard of Review
        As 
previously discussed, we review the trial court's decision to admit or exclude 
evidence under an abuse of discretion standard. Burden, 55 S.W.3d at 615; 
Green, 934 S.W.2d at 101-02; Montgomery, 810 S.W.2d at 379-80.
2. Analysis
        The 
Texas Rules of Evidence provide that to be admissible evidence must be relevant. 
Tex. R. Evid. 402. Evidence is 
relevant if it has “any tendency to make the existence of any fact that is of 
consequence to the determination of the action more probable or less probable 
than it would be without the evidence.” Tex. 
R. Evid. 401. In determining whether evidence is relevant, courts look to 
the purpose for offering the evidence and whether there is a direct or logical 
connection between the offered evidence and the proposition sought to be proved. 
Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. 
ref'd). Furthermore, the court of criminal appeals has stated that “evidence 
merely tending to affect the probability of the truth or falsity of a fact in 
issue is logically relevant.” Montgomery, 810 S.W.2d at 376. While all 
relevant evidence is normally admissible, Rule 403 mandates the exclusion of 
relevant evidence “if its probative value is substantially outweighed by the 
danger of unfair prejudice, confusion of the issues, or misleading the jury, or 
by considerations of undue delay, or needless presentation of cumulative 
evidence.” Tex. R. Evid. 402, 
403; see also Jones v. State, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996), 
cert. denied, 522 U.S. 832 (1997).
1. Naming Dunbar as the “Defendant”
        In 
his fourth issue, Dunbar contends that the trial court abused its discretion by 
overruling his objection to testimony regarding whom Officer Lynnelle Rose had 
named as the “defendant” in the case. Dunbar asserts that this testimony was 
unfairly prejudicial because it had the prejudicial effect of telling the jury 
that he was the subject of investigation from the very beginning and that he 
must be guilty because the officer named him as the defendant. Thus, he argues 
that the trial court’s admission of this evidence over his objection violated 
Rule 403. We disagree.
        In 
its opening statement, the State told the jury that C.D.E. had, prior to trial, 
recanted her allegations that she was having sex with Dunbar. Thus, the State 
argues that evidence of who police identified as the defendant after first 
interviewing C.D.E. was relevant in determining which of C.D.E.’s multiple 
statements—her initial statement to police or her later recantation—were 
true.
        Although 
we believe that this is a close call because C.D.E. had not yet testified 
regarding her recantation, we cannot say that the trial court abused its 
discretion in admitting the evidence because the trial court could have 
reasonably concluded that the testimony was relevant to the jury’s evaluation 
of C.D.E.’s allegations. See Montgomery, 810 S.W.2d at 376. Nor can we 
say that the probative value of the testimony was outweighed by the danger of 
unfair prejudice because Officer Rose’s testimony was not the type of 
testimony that would suggest that the jury make a decision on an improper basis. 
See Montgomery, 810 S.W.2d at 389 (indicating that unfair evidence is 
that which has an undue tendency to suggest that a decision be made on an 
improper basis, commonly an emotional one). Accordingly, we overrule Dunbar’s 
fourth issue.
b. C.D.E.’s Willingness to Attend an Interview
        In 
his sixth issue, Dunbar contends that the trial court abused its discretion by 
overruling his objection to the testimony of Detective Jeffery Rogers wherein 
Detective Rogers testified as to his impression of C.D.E.’s willingness to 
attend an interview.
        At 
the time of Officer Rogers’s testimony, C.D.E. had already testified that she 
had told the lead prosecutor during the week preceding trial “that nothing 
happened between [herself] and [Dunbar].” Thus, the State contends that 
Detective Rogers’s “present sense impression” regarding C.D.E.’s 
willingness to attend an interview was relevant in considering which of 
C.D.E.’s multiple assertions were true. Again, after reviewing the testimony, 
we cannot say that the trial court abused its discretion because the trial court 
could have reasonably believed that the testimony was relevant to the jury’s 
evaluation of C.D.E.’s allegations. See Montgomery, 810 S.W.2d at 376. 
Nor, can we say that the probative value of this testimony was substantially 
outweighed by the danger of unfair prejudice. See Montgomery, 810 S.W.2d 
at 389. Accordingly, we overrule Dunbar’s sixth issue.
B. Motions for Mistrial
        In 
his fifth and seventh issues, Dunbar contends that the trial court erred when it 
overruled his motions for mistrial. Specifically, in his fifth issue, Dunbar 
contends that the trial court erred by denying two motions for mistrial after 
sustaining his objections and instructing the jury to disregard testimony 
regarding the swearing of a warrant affidavit and the filing of that affidavit. 
In his seventh issue, he contends that the trial court erred when it denied his 
motion for mistrial after sustaining his objection and instructing the jury to 
disregard a question by the prosecutor regarding the investigator’s impression 
of whether C.D.E. was “telling the truth” during an interview with police.
        As 
previously discussed, when the trial court sustains an objection and instructs 
the jury to disregard but denies a defendant’s motion for a mistrial, the 
issue is whether the trial court abused its discretion in denying the mistrial. Hawkins, 
135 S.W.3d at 77. Further, a prompt instruction to disregard will ordinarily 
cure error associated with an improper question and answer. Simpson, 119 
S.W.3d at 272. Here, the trial court promptly instructed the jury to disregard 
and Dunbar provides us with no compelling reason why the trial court’s 
instruction was not effective. See Simpson, 119 S.W.3d at 272; see 
also Gardner, 730 S.W.2d at 696 (indicating that we presume the jury will 
follow the trial court’s instruction). Accordingly, we hold that the trial 
court did not abuse its discretion when it denied Dunbar’s motions for 
mistrial. See Hawkins, 135 S.W.3d at 77. Dunbar’s fifth and seventh 
issues are overruled.
VIII. Admission of the Presentence Investigation (“PSI”) 
Report
        In 
his ninth issue, Dunbar contends that the trial court erred when it overruled 
his objections to the admission of a PSI report at the punishment stage of his 
trial. Specifically, we interpret Dunbar’s contention to be that the PSI 
report contains a psychological evaluation by the PSI officer, and not merely a 
report by the PSI officer to the court of the evaluations of the experts who 
examined Dunbar, and that the PSI officer is not qualified as an expert in 
accordance with the rules of evidence to offer her opinions.
        After 
reviewing the record, we cannot say that the trial court abused its discretion 
in admitting the PSI report into evidence. See Burden, 55 S.W.3d at 615 
(indicating that we review a trial court’s decision to admit or exclude 
evidence under an abuse of discretion standard). Although the PSI report is 
written so that it could be argued that the PSI officer is rendering an 
evaluation of Dunbar’s psychosexual testing, it is equally plausible that the 
PSI officer is reporting the expert’s test results and opinions and the PSI 
report is just poorly drafted. In that regard, the PSI report clearly indicates 
that the testing was performed and interpreted by employees of professional 
entities, persons trained as licensed professional counselors with masters 
degrees, or persons with PhD’s, to whom Dunbar has raised no objection. 
Further, we find nothing in the PSI report to indicate that the PSI officer 
claimed to be an expert in this area or claimed to be qualified to make such 
evaluations. Thus, the wording of the PSI report is susceptible to more than one 
interpretation in this regard. As such, we can not say that the trial court 
admitted the evidence without regard to any guiding principals or that its 
ruling lies outside the zone of reasonable disagreement. See Montgomery, 
810 S.W.2d at 391. Accordingly, we overrule Dunbar’s ninth issue.
IX. Conclusion
        Having 
overruled each of Dunbar’s nine issues, we affirm the trial court’s 
judgment.
  
   
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
  
PANEL B:   LIVINGSTON, 
DAUPHINOT, and MCCOY, JJ.
  
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: May 12, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
We will address Dunbar’s issue challenging the sufficiency of the evidence 
before addressing his remaining issues.
3.  
The record reflects that C.D.E. admitted during cross-examination that one entry 
in her diary was untrue. See supra note 4.
4.  
See Simpson v. State, 119 S.W.3d 262, 269 (Tex. Crim. App. 2003) (stating 
that the admission of hearsay evidence against a criminal defendant implicates 
the confrontation clause because the defendant is not afforded an opportunity to 
confront the out-of-court declarant).
5.  
Further, Dunbar did not object to the admission of the diary on confrontation 
clause grounds at trial, nor does he brief any related point on appeal.
6.  
During cross-examination C.D.E. admitted that the July 4, 2002 entry in her 
diary indicating that she and Dunbar “watched a dirty but sexy movie” was 
untrue.
7.  
The record reflects that Dunbar failed to lodge any objection at trial based 
upon the constitutional and or statutory grounds he now asserts on appeal.  
Thus, Dunbar has failed to preserve for this court’s review any error based 
thereon.  See Tex. R. App. P. 
33.1; Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000), cert. 
denied, 531 U.S. 1128 (2001).  Accordingly, we will not address these 
grounds on appeal.  See Mendez v. State, 138 S.W.3d 334, 342 (Tex. 
Crim. App. 2004) (holding that failure to comply with Tex. R. App. P. 33.1(a) results in 
forfeiture of error).